IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 16-cv-02240-CMA-STV

JOSEPH E. GOMEZ, III,

    Plaintiff,

v.

SAM'S WEST, INC.,

    Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S PARTIAL MOTION TO DISMISS**

---

This matter is before the Court on Defendant's Partial Motion to Dismiss Plaintiff's Amended Complaint. (Doc. # 23.) For the following reasons, the Motion is granted in part and denied in part.

## I.    LAW GOVERNING A MOTION TO DISMISS

The purpose of a motion to dismiss under Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick,* 40 F.3d 337, 340 (10th Cir. 1994). A complaint will survive such a motion only if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." *Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1192 (10th Cir. 2009).

In reviewing a Rule 12(b)(6) motion, a court must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff. *Williams v. Meese,* 926 F.2d 994, 997 (10th Cir. 1991). Nevertheless, a complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir. 1991).

## II. BACKGROUND

Plaintiff Joseph E. Gomez has been employed by Defendant Sam's West Inc. for almost seventeen years, serving primarily as a Marketing Representative and Membership Team Lead. (Doc. # 17, p. 2.) Plaintiff contends that, throughout his employment, Defendant has discriminated against him on the basis of his race and religion — denying him promotions, transfers, and paid leave without a proper basis for doing so. On February 20, 2013, Plaintiff experienced a work-related injury but Defendant denied his workers' compensation claim and, according to Plaintiff, improperly forced him onto unpaid leave under the Family Medical Leave Act (FMLA). An administrative law judge later deemed Plaintiff's injury compensable and granted him workers' compensation benefits. Plaintiff contends that, when he returned to work, Defendant retaliated against him for seeking these benefits.

Based generally on these allegations, Plaintiff filed two Charges of Discrimination with the EEOC — one on April 16, 2013 (Doc. # 23-1) and the other on July 13, 2015 (Doc. # 23-2). Plaintiff then initiated this lawsuit on November 10, 2016, alleging employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq.*, and Colorado common law. Plaintiff specifically raises the following seven claims for relief: discrimination based on (1) religion and (2) race; (3) violation of the ADA; (4) retaliation; (5) spoliation; (6) bad faith; and (7) defamation. Defendant moves to dismiss Plaintiff's Counts One, Two, Three, and Four on grounds that Plaintiff failed to exhaust his administrate remedies; and Counts Five and Six on grounds that Colorado does not recognize a civil tort claim for spoliation or a bad faith claim with respect to the firing of an at-will employee. The Court addresses each contention in turn.

### III. FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Defendant first argues that Plaintiff failed to properly exhaust mandatory administrative remedies with respect to his discrimination and retaliation claims. Except with respect to a small group of claims, the Court disagrees and finds that Plaintiff properly exhausted his claims before the EEOC.

**A.   LAW**

Exhaustion of administrative remedies is a prerequisite to suit under Title VII and the ADA. *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005); *MacKenzie v. City of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005); *Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir. 1996). The purpose of the exhaustion requirement is to

3

protect employers by giving them notice of the claims against them and to provide the EEOC with an opportunity to conciliate them in the first instance. *Green v. Donahue*, 760 F.3d 1135, 1140 (10th Cir. 2014) *cert. granted*, 135 S.Ct. 1892 (2015); *Cooper v. Corr. Corp. of Am.*, No. 15-CV-00755-JLK, 2015 WL 5736838, at *2 (D. Colo. Oct. 1, 2015).

Administrative remedies generally must be exhausted as to each discrete instance of discrimination or retaliation. *Apsley v. Boeing Co.*, 691 F.3d 1184, 1210 (10th Cir. 2012); *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1194–95 (10th Cir. 2004); *see also Jones v. Denver Post Corp.*, 203 F.3d 748, 755 (10th Cir. 2000) (when the employee gives notice of only one act of discrimination, she cannot bring suit on other, past acts of discrimination). To properly exhaust, "the [EEOC] charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim[, because] each discrete incident of alleged discrimination or retaliation constitutes its own unlawful employment practice for which administrative remedies must be exhausted." *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) (internal quotation marks omitted); *Cooper*, 2015 WL 5736838, at *1. However, a subsequent suit in district court may include allegations of discrimination reasonably related to the allegations listed in the administrative charge, including new acts occurring during the pendency of the administrative charge. *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1409 (10th Cir. 1997); *Brown v. Hartshorne Public School Dist. # 1*, 864 F.2d 680, 682 (10th Cir. 1988).

**B.     ANALYSIS**

In his EEOC Charges, Plaintiff alleged discrimination based on religion, race, national origin, and disability.  He specifically contended as follows:

- Defendant denied him promotions at work because he could not work on Sundays for religious reasons.  (Doc. # 23-1, p. 1–2.)

- Defendant treated Caucasian and Hispanic employees disparately with respect to job bereavement, vacation, and holiday leave.  (Doc. # 23-2, p. 1–4.)  Defendant also mentioned that "management has [each time] chosen to promote a white person over [him]."  (Doc. # 23-1, p. 2.)

- Defendant improperly denied Plaintiff worker's compensation benefits, forced him onto FMLA leave, and refused to allow him to return to work until he was 100% recovered — all in violation of the ADA.  (Doc. # 23-1, p. 1–2.)

Plaintiff also broadly claimed that Defendant retaliated against him, in pertinent part, based on his "repeated requests for religious accommodation," his pursuit of worker's compensation benefits, and his filing of EEOC Charges.  (Doc. ## 23-1, 23-2.)

For the most part, Plaintiff's Complaint raises these same allegations.  His religious discrimination claim focuses on his inability to work on Sundays and subsequent loss of promotions.  (Doc. # 17, p. 17–19.)  His race discrimination claim details the differential treatment between Caucasian and Hispanic employees, particularly with respect to bereavement leave, vacation leave, and job promotions.  (*Id.* at 20–21.)  Plaintiff's ADA claim is based on Defendant's denial of his worker's compensation claim, Defendant's consequent refusal to allow Plaintiff to return to work

with reasonable accommodations for his injury, and Plaintiff's "forced" FMLA leave. (*Id.* at 22–25.) Likewise, Plaintiff's retaliation claim states that Defendant retaliated against him because of his worker's compensation action and EEOC Charges. (*Id.* at 25–27.) He contends that he has experienced harassment, intimidation, and confrontation as a result of those filings. (*Id.* at ¶¶ 86, 87, 91.)

Essentially, the allegations in Plaintiff's Complaint, while significantly more detailed, do not so depart from the contentions raised in his Charges to support dismissing them for lack of administrative exhaustion at this time. Indeed, much of Plaintiff's present contentions are virtually identical to those previously raised. And to the extent they are not identical, the Court finds that, at this stage in the litigation, the claims appear "reasonably related" to the allegations in his administrative Charges such that an EEOC investigation into them could "reasonably be expected to follow."[1] *Aramburu*, 112 F.3d at 1409; *Patterson v. Dex Media, Inc.*, No. 11-CV-02336-LTB-BNB, 2013 WL 229575, at *2 (D. Colo. Jan. 22, 2013).

---

[1] For example, Plaintiff contends that Defendant increased his quotas, spread rumors, and failed to recognize his accomplishments in retaliation for this worker's compensation action. (Doc. # 17, ¶ 91.) Although not specifically mentioned in his administrative Charges, these allegations appear sufficiently related to Plaintiff's retaliation action to allow them to proceed. Also, Plaintiff's allegations that Defendant harassed him by putting heavy boxes on his desk, intentionally instructing Plaintiff to do work that violated his weight restrictions, and threatening termination during his FMLA leave, although not previously mentioned or reasonably related to Plaintiff's exhausted ADA claims, appear sufficiently related to Plaintiff's allegations of retaliation to allow them to proceed at this time. (*Id.* at ¶¶ 77; 85.) Similarly, Plaintiff's claims concerning Defendants' alleged "sabotage" of Plaintiff's Medicaid and TANF applications, although not mentioned in Plaintiff's EEOC Charges, expressly or by implication, could stem from Plaintiff's broad retaliation assertions and be expected to flow from them. At this stage in the litigation, therefore, the Court, which must view the evidence in the light most favorable to Plaintiff, declines to dismiss or strike those allegations based on administrative exhaustion. (*Id.* at ¶¶ 32, 76(e), 111(f).)

Accordingly, the Court concludes that Plaintiff has adequately exhausted his discrimination and retaliation claims and therefore denies Defendant's request for dismissal of Counts I–IV.

### IV. SPOLIATION

Plaintiff's spoliation claim alleges that Defendant has intentionally failed to disclose video footage capturing Plaintiff's 2013 injury that occurred just outside the entrance to Sam's Club. Defendant argues that Plaintiff's spoliation claim should be dismissed because Colorado does not recognize an independent civil tort claim for spoliation. The Court agrees and dismisses the claim.

Where, as here, diversity of citizenship between the parties requires a federal District Court to hear an action sounding in state law, the Court is required to follow the decisions of the state's highest court or, where no controlling decision exists, the Court must predict how the state's highest court would rule on the issue. *Grynberg v. Total*, S.A., 538 F.3d 1336, 1354 (10th Cir. 2008). Colorado courts have not yet recognized or enforced an independent spoliation tort action. *Johnson v. Liberty Mut. Fire Ins. Co.*, 648 F.3d 1162, 1164 (10th Cir. 2011). At least one other court in this division has predicted that "were the Colorado Supreme Court to consider the question, it would join the majority of jurisdictions that decline the recognize a stand-alone tort claim for spoliation of evidence." *Johnson v. Liberty Mut. Fire Ins. Co.*, 653 F. Supp. 2d 1133, 1139 (D. Colo. 2009), *aff'd*, 648 F.3d 1162. This Court agrees with the reasoning and conclusion of that court. Indeed, the great weight of authority runs against recognizing a common-law cause of action for spoliation of evidence, see *Metlife Auto & Home v.*

7

*Joe Basil Chevrolet, Inc.*, 753 N.Y.S.2d 272, 276 (2002) (citing cases), and Plaintiff has failed to show how Colorado law so differs from the mainstream that one could reliably predict the Colorado Supreme Court "would buck the national trend." *Johnson*, 653 F. Supp. at 1139.

Plaintiff nonetheless states, "There is Colorado case law concerning spoliation and Colorado Plaintiffs have been successful in pursuing spoliation claims," citing three cases in support. (Doc. # 32, p. 11.) Plaintiff is incorrect, and the cases he cites are inapplicable. They do not concern independent spoliation causes of action; they instead concern the trial court's authority to impose sanctions for spoliation under Colo. R. Civ. Proc. 37. *See Pfantz v. Kmart Corp.*, 85 P.3d 564, 568–69 (Colo. App. 2003) (addressing the court's discretionary power to impose sanctions for the spoliation of evidence); *Aloi v. Union Pac. R.R. Corp.*, 129 P.3d 999, 1006 (Colo. 2006) (same); *Castillo v. Chief Alternative, LLC*, 140 P.3d 234, 238 (Colo. App. 2006) (same).

Because spoliation of evidence is not a separate and independent cause of action under Colorado law, the Court grants Defendant's motion to dismiss Plaintiff's Count V, Spoliation.

## V. BAD FAITH AND FAIR DEALING

Last, Defendant seeks dismissal of Plaintiffs bad faith claim — but only to the extent that it alleges violations of "good faith and fair dealing" and Defendant's "core values and commitments." (Doc. # 23, p. 11.) Defendant contends that Plaintiff is an at-will employee, and Colorado does not recognize a cause of action for the breach of good faith and fair dealing in the context of at-will employment. This Court agrees.

In *Decker v. Browning-Ferris Indus. of Colorado, Inc.*, 931 P.2d 436, 446 (Colo. 1997), the Colorado Supreme Court declined to recognize the existence of a tort claim for breach of the covenant of good faith and fair dealing in the employment context. The Colorado Court of Appeals has further declined to recognize the existence of an implied covenant of good faith and fair dealing in the context of otherwise at-will employment contracts. *See Farmer v. Central Bancorporation, Inc.*, 761 P.2d 220, 221–22 (Colo. App. 1988); *Montoya v. Local Union III, Int'l Bhd. of Elec. Workers*, 755 P.2d 1221, 1225 (Colo. App.1988); *Pittman v. Larson Distrib. Co.*, 724 P.2d 1379, 1385 (Colo. App. 1986).

Without citing any legal authority, Plaintiff counters that being an at-will employee does not exempt his employer from having "obligations of good faith and fair dealing and/or core values and commitments." (Doc. # 32, p. 12) (internal quotations omitted). That an employer should operate in good faith does not mean, however, that the employer has a legal or contractual duty to behave a certain way when, as here, there is no employment contract governing the at-will employment relationship. The Colorado Court of Appeals said as much in *Farmer*, 761 P.2d at 221–22, when it rejected the plaintiff's argument that, inherent in a contract of employment, is an employer's legal obligation to deal with its employees in good faith. The division instead concluded that an implied covenant of good faith and fair dealing, although found in some commercial contracts, does not extend to at-will employment contracts. *Id.*; *see also Montoya*, 755 P.2d at 1225 (implied "covenant of good faith" has no basis in Colorado state employment law); *Pittman*, 724 P.2d at 138 (declining to extend the implied covenant of

good faith and fair dealing, found in some commercial contracts, *see, e.g.*, Colo. Rev. Stat. § 4-1-203, to employment contracts as well).

Accordingly, the Court strikes those allegations of Count VI relating to Defendant's alleged breached the covenant of good faith and fair dealing and its "core values and commitments."[2] However, Count VI remains viable to the extent that it alleges bad faith with regard to the handling of Plaintiff's workers' compensation claim.

## VI. CONCLUSION

Accordingly, the Court GRANTS IN PART AND DENIES IN PART Defendant's Partial Motion to Dismiss. (Doc. # 23.) The Court ORDERS:

1. Defendant's request that this Court dismiss Counts I–IV is DENIED.

2. Defendant's request that this Court dismiss Count V - Spoliation is GRANTED and Count V is DISMISSED with prejudice.

3. Defendant's request that this Court dismiss Count VI – Bad Faith is GRANTED IN PART AND DENIED IN PART. Count VI is DENIED IN PART in that it is not dismissed. However, it is GRANTED IN PART in that the Court strikes those allegations of Count VI relating to Defendant's alleged breached the covenant of good faith and fair dealing and its "core values and commitments." As such, Claim VI is limited to alleged bad faith with regard to the handling of Plaintiff's workers' compensation claim.

DATED: August 14, 2017        BY THE COURT:

*[signature: Christine M Arguello]*

---

[2] These claims are mostly contained in paragraphs 109–110, 111(f), and 112–114.

_____
CHRISTINE M. ARGUELLO
United States District Judge