**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 16-cv-02240-CMA-STV

JOSEPH E. GOMEZ, III,

     Plaintiff,

v.

SAM'S WEST, INC.,

     Defendant.

---

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

     Currently before the Court is Defendant Sam's West Inc.'s Motion for Summary Judgment. (Doc. # 80.) For the reasons discussed herein, the Court grants Defendant's motion.

## I.     BACKGROUND AND PROCEDURAL HISTORY

     Plaintiff Joseph E. Gomez was employed by Defendant Sam's West Inc. for almost seventeen years, serving primarily as a Marketing Representative and Membership Team Lead.  (Doc. # 17 at 2.) Plaintiff contends that throughout his employment Defendant discriminated against him on the basis of his race and religion — denying him promotions, transfers, and paid leave without a proper basis for doing so. (*Id.* at ¶¶ 49, 50, 60.) On February 20, 2013, Plaintiff experienced a work-related injury but Defendant denied his workers' compensation claim and, according to Plaintiff, improperly forced him onto unpaid leave under the Family Medical Leave Act (FMLA). *Id.* An administrative law judge (ALJ) later determined that Plaintiff sustained an injury

that "arose out of and in the course of employment[,] [but] the injury did not entitle Plaintiff to disability indemnity compensation and thus, was not a 'compensable' injury as described in the Workers' Compensation Act." (Doc. # 101-7 at 8.) Plaintiff contends that when he returned to work, Defendant retaliated against him for pursuing workers' compensation and for submitting complaints through Defendant's ethics systems. (Doc. # 17 at ¶ 87.)

Based generally on these allegations, Plaintiff filed two Charges of Discrimination with the EEOC — one on April 16, 2013 ("April 2013 Charge") (Doc. # 23-1) and the other on July 13, 2015 ("July 2015 Charge") (Doc. # 23-2). The EEOC issued a right-to-sue letter and Plaintiff subsequently initiated this lawsuit on November 10, 2016, alleging employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq.*, and Colorado common law. Specifically, Plaintiff alleged the following seven claims for relief: discrimination based on (1) religion and (2) race; (3) violation of the ADA; (4) retaliation; (5) spoliation; (6) bad faith; and (7) defamation. (Doc. # 17.) Defendant moved for partial dismissal of Plaintiff's claims under Rule 12(b)(6). (Doc. # 23.) The Court granted Defendant's motion in part, dismissing the spoliation claim and limiting the bad faith claim to only allegations related to the handling of Plaintiff's workers' compensation claim. (Doc. # 58.) Defendant now argues for summary judgment on Plaintiff's remaining claims for relief. (Doc. # 80.)

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing motions for summary judgment, a court may not resolve issues of credibility, and must view the evidence in the light most favorable to the non-moving party—including all reasonable inferences from that evidence. *Id.* However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating an absence of genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claims; rather, the movant need simply point the court to a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant meets its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy this burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence from which a rational trier of fact could find for the nonmoving party." *Adler*, 144 F.3d at 671. "To accomplish this, the

facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id*. Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

### III.   CLAIMS I & II—TITLE VII DISCRIMINATION

### A.   TIMELINESS

#### 1.   Applicable Law

Title VII requires an employee challenging an employment practice to exhaust administrative remedies by filing a charge of discrimination with the EEOC within "300 days after the allegedly unlawful act." *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1163 (10th Cir. 2007) (citing 42 U.S.C. § 200e-5(e)(1)). The limitations period begins on "the date the employee is notified of an adverse employment decision by the employer." *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1187 (10th Cir. 2003); *see also Del. State Coll. v. Ricks*, 449 U.S. 250 (1980).

"Each discrete incident of [discrimination or retaliation] constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted." *Martinez v. Potter*, 347  F.3d 1208, 1210 (10th Cir. 2003) (citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110–13 (2002)). Therefore, when a complaint alleges multiple discrete acts, the limitations period runs separately for each act. *Davidson*, 337 F.3d at 1185. Furthermore, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 113–14. Discrete discriminatory acts that require their

own timely exhaustion of administrative remedies include "termination, failure to promote, denial of transfer, or refusal to hire." *Id*. at 114.

2.    Analysis

Defendant first argues that the majority of the alleged unlawful acts underlying Claims I and II are time-barred. (Doc. # 80.) In response, Plaintiff asserts that this Court already found that Plaintiff adequately exhausted his administrative remedies when it denied Defendant's 12(b)(6) motion related to those claims, and that the claims are not, therefore, time-barred. The Court agrees with Defendant. (Doc. # 101 at 22.)

To begin, Plaintiff misrepresents the Court's ruling on Defendant's 12(b)(6) motion. The Court found that the unlawful acts alleged by Plaintiff in his Complaint were sufficiently related to the allegations in the EEOC charges such that dismissal of his Title VII claims was not warranted at that time. (Doc. # 58.) The Court did not determine, however, whether the EEOC charges were timely under 42 U.S.C. § 200e-5(e)(1). Moreover, that Plaintiff's claim survived dismissal under Rule 12(b)(6) does not mean that it must also survive Defendant's motion for summary judgment. Indeed, to defeat summary judgment, Plaintiff must "go beyond the pleadings." *Celotex*, 477 U.S. at 324.

Moreover, many of Plaintiff's allegations are time-barred. Plaintiff filed EEOC charges on April 16, 2013 and July 14, 2015 alleging discrete acts of discrimination— failure to promote and denial of his worker's compensation claim and bereavement leave request. (Doc. # 80-5.) As for the failures to promote, Plaintiff specifically alleges that he sought and was improperly denied the following positions:

1. Centralize Team Lead, 2001;

2. April 2010 Market Membership Sales Manager, April 2010;

3. Manager in Training, 2010;

4. Asset Protection Manager, 2010;

5. Manager in Training, October 2011;

6. Membership Asst. Manager, December 18, 2011;

7. Advantage Coordinator, 2011;

8. Advantage Coordinator, May 5, 2012;

9. Advantage Coordinator, August 2012;

10. Market Assistant, November 2012–January 2013;

11. Team Lead--Membership, August 2013;

12. Truckload Sales Manager, late fall, 2013;

13. Asset Protection Assistant, November 7, 2013;

14. Membership Assistant Manager, November–December, 2013;

15. Team Lead Membership, September 2014;

16. Optical Associate, December 2014;

17. Membership & Marketing Asst. Manager, January 2016;

18. Membership & Marketing Asst. Manager, May 2016.

(Doc. ## 101-10, 80-5.) [1]

Because only acts that occurred within 300 days before the filing of the EEOC

charges are timely, *Morgan*, 536 U.S. at 113–14, any alleged discriminatory act related

---

[1] Plaintiff contests Defendant's listing of the positions Plaintiff sought. (Doc. # 101.) Plaintiff does not, however, indicate how the list is inaccurate nor provide the Court with his own complete list. Instead, Plaintiff cites to fourteen pages of its interrogatory response. (Doc. # 101 at 3.) The Court is not responsible for sifting through the record to find support for a party's argument. *Sil-Flo, Inc. v. SFHC Inc.*, 912 F.2d 1507, 1513 (1990). Nevertheless, the Court did review the record and was unable to locate an inconsistency between Plaintiff's interrogatory response and Defendant's list. Accordingly, the Court relies on the list provided by Defendant.

to the April 2013 charge that occurred prior to June 20, 2012 is untimely. Therefore, the alleged denial of positions 1–8 are time barred. Similarly, any discrete act related to the July 2015 charge that occurred prior to September 17, 2014 is also untimely, and the alleged denials of positions 11–14 are therefore likewise barred. *See Morgan*, 536 U.S. at 113–14. Moreover, because Plaintiff did not file another charge after July 2015, the positions Plaintiff sought in 2016 (positions 17 and 18) are not actionable. *See Eisenhour v. Weber County*, 744 F.3d 1220, 1227 (10th Cir. 2014) ("[F]ederal courts lack jurisdiction over incidents occurring after the filing of an EEOC claim unless the plaintiff files a new EEOC claim or otherwise amends her original EEOC claim. . . .") The Court accordingly grants summary judgment on Plaintiff's Claims I and II insofar as they are based on the untimely allegations set forth above.[2]

The Court next addresses Plaintiff's remaining, timely allegations—ultimately finding that they, too, cannot survive summary judgment.

**B.    TIMELY ACTS**

1.    Applicable Law

Title VII makes it unlawful "for an employer…to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Under the burden-shifting framework established in *McDonnell Douglas Corp. v.* Green, 411 U.S. 792, 802–04 (1973), a plaintiff bears the initial burden of establishing a prima facie case of discrimination. The Supreme Court, in

---

[2] In so deciding, the Court is considering the timeliness of the alleged unlawful practices only in relation to Plaintiff's Title VII discrimination claims. The Court does not consider or address whether the alleged acts would be timely for a hostile work environment claim because that claim was never raised by Plaintiff.

*EEOC v. Abercrombie & Fitch Stores, Inc.*, 135 S.Ct. 2028, 2031–32 (2015), "indicated that a 'failure to accommodate' claim is a claim for 'disparate treatment' and thus must ultimately satisfy the general elements of a 'disparate treatment' claim." *Tabura v. Kellogg USA*, 880 F.3d at 544, 549 n.3 (10th Cir. 2013). To establish a prima facie case of disparate treatment (and failure to accommodate), a plaintiff must show (1) he belongs to a protected class; (2) he suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination. *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007).

The phrase "adverse employment action" is to be liberally defined and not limited to monetary losses. *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1217 (10th Cir, 2003) (citing *Sanchez v. Denver Public Schools*, 164 F.3d 527, 532 (10th Cir. 1998)). To determine whether an act is an adverse action, courts take a "case-by-case approach, examining the unique factors relevant to the situation at hand." *Id.* Conduct rises to the level of an "adverse employment action" when it "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* Actions presenting nothing beyond a "mere inconvenience or alteration of responsibilities," however, do not constitute adverse employment actions. *Id.*

A plaintiff can establish an inference of discriminatory motive by "a variety of circumstances," ranging from "actions or remarks made by decision makers that could be viewed as reflecting a discriminatory animus" to "the timing or sequence of events leading to [the plaintiff's] termination." *Plotke v. White*, 405 F.3d 1092 at 1101 (10th Cir. 2005) (internal quotation marks omitted). A plaintiff can also establish such an inference

by showing that the employer treated similarly situated employees more favorably. *PVNF, L.L.C.*, 487 F.3d at 800.

Once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse action. *Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304, 1311 (10th Cir. 2006). If the employer does so, the burden shifts back to the plaintiff to show that there is a genuine issue of material fact as to whether the employer's proffered reasons are pretextual. *Id*.

    2.   <u>Analysis</u>

Plaintiff alleges he was discriminated against both on the basis of his race and religion. (Doc. # 17.) Specifically, Plaintiff asserts Defendant improperly denied him promotions and transfers based on his race and religion. (*Id*. at ¶¶ 61, 50.) Plaintiff further alleges that Hispanic employees, like him, were treated differently from Caucasian employees in regards to transfer requests, vacation, bereavement leave, and worker's compensation situations. (*Id*. at ¶ 60.)

Defendant contends that Plaintiff's discrimination claims fail as a matter of law because Plaintiff cannot (1) demonstrate that he suffered an adverse employment action or (2) establish an inference of discrimination. (Doc. # 80 at 14–15.) Plaintiff does not respond to Defendant's argument and instead reiterates allegations contained in the Complaint. Indeed, almost three pages of Plaintiff's response are simply excerpts of the Complaint. (Doc. # 101 at 25–28.) Such a response is patently insufficient at the summary judgment stage. *See Luster v. Vilsack*, 667 F.3d 1089,1096 (10th Cir. 2011) (quoting *Kannady v. City of Kiowa,* 590 F.3d 1161, 1169 (10th Cir. 2010) ("At summary

judgment, the nonmoving party cannot rest on mere allegations but 'must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which [he or she] carries the burden of proof.")

Nevertheless, the Court identifies four positions Plaintiff claims he sought and was unjustly denied and that are timely:

1. Advantage Coordinator, August 2012;

2. Market Assistant, November 2012;

3. Team Lead—Membership, September 2014;

4. Optical Associate, December 2014.

(Doc. ## 80-1, 80-3.)

The Court finds that, based on the undisputed facts and applicable law, none of these alleged "denials" are sufficiently adverse to support Plaintiff's claim of discrimination. To begin, Plaintiff concedes that he was selected for the Advantage Coordinator position, but that he withdrew his name from consideration. (Doc. # 101 at 3.) Although Plaintiff asserts that he removed himself because he learned club managers could block potential transfers (Doc. # 80-3 at 71), there is nothing in the record that indicates that this was anything more than a speculative belief on the part of Plaintiff. *See Bones*, 366 F.3d at 875 (finding that conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence.) Moreover, because Plaintiff withdrew himself, Defendant never "blocked" or denied Plaintiff the position and therefore did not take an adverse action against him. Similarly, Plaintiff did not apply to the Optical Associate position because he believed that he had to be optician-certified and available Sundays. (*Id.* at 74.)

Plaintiff, by choosing not to apply to the position, again precluded adverse action by Defendant.

Additionally, all of the timely "failures to promote" Plaintiff alleges were in fact applications for positions that constituted demotions or lateral transfers. (Doc. # 101.) A lateral transfer does not constitute an adverse employment action, unless, for example, the record shows that the work is less arduous, the nature of the supervision differs, and the position provides more leave flexibility. *See Piercy v. Maketa*, 480 F.3d 1192, 1205 (10th Cir. 2007). Plaintiff does not point to anything in the record to demonstrate that the lateral positions he sought were in any way materially different from his current job. (Doc. # 101.) For example, although Plaintiff "denies" Defendant's assertion that the Market Assistant position was a lateral move (Doc. # 101 at 4), he does not support this assertion with facts or law. *See Wheeler v. BNSF Ry. Co.*, 418 F.App'x 738, 746 (10th Cir. 2011) (upholding summary judgment on Title VII claim when the record did not establish any objective reason the sought transfer would be more desirable or materially different). The nonmovant must do more than refer to allegations of counsel contained in a brief to withstand summary judgment, *Phillips v. Calhoun,* 956 F.2d 949, 952–53 (10th Cir.1992); sufficient evidence must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein. *Adler*, 144 F.3d at 671.

As for the alleged unjust denial of bereavement pay, Plaintiff concedes that the pay was, in fact, granted. (Doc. # 17 ¶ 44.) Thus, there is no adverse action. Similarly, Plaintiff alleges he was unjustly denied vacation time, but he also admits that, after he objected, a manager helped him get the vacation approved. (Doc. # 101 at ¶ 45–46.) A vacation request that was ultimately approved cannot constitute adverse action absent

some other indication of harm. In addition, even if Plaintiff's vacation request had been denied, an employer's refusal of a preferred vacation schedule does not rise to the level of "adverse conduct." Rather, it is a minor annoyance.  *See E.E.O.C. v. Jetstream Ground Services, Inc.*, 134 F. Supp. 3d 1298 at 1326 (D.Colo. 2015) ("Although the Tenth Circuit liberally interprets the second prong of a prima facie case… an employer's act must do more than *de minimis* harm to be 'materially adverse.'") (citing *Hillig v. Rumsfeld*, 381 F.3d 1028, 1033 (10th Cir. 2004)).

Moreover, with respect to all of Plaintiff's allegations of discrimination, Plaintiff fails to demonstrate the third prong of a prima facie case—that the challenged actions occurred under circumstances giving rise to an inference of discrimination. *PVNF L.L.C.*, 487 F.3d at 800. In the Complaint, Plaintiff broadly asserts that similarly-situated Caucasian employees were treated differently. *See, e.g.,* (Doc. # 17 at ¶ 60.) Plaintiff does not, however, allege specific facts to demonstrate that the Caucasian employees were similarly situated. (Doc. # 17; Doc. # 101.) He does not allege, for example, that the Caucasian employees, who allegedly were treated differently dealt with the same supervisor, were subject to the same evaluation standards, had similar responsibilities, or were in any other way similarly situated. *See McGowan v. City of Eufala* ("To show disparate treatment, plaintiff must establish she was similarly situated … in all relevant aspects); *see also Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997). Nor does Plaintiff cite to specific facts such as "actions or remarks made by decision makers" or "the timing or sequence of events leading to [Plaintiff's] termination." *See Plotke*, 405 F.3d at 1101. Instead, Plaintiff baldly states in his response, "[t]he circumstances of the adverse employment action to which Plaintiff has been subjected

give rise to an inference of discrimination." (Doc. # 101 at 24.) "Such unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Phillips v. Calhoun*, 956 F.2d 949, 951 n.3 (10th Cir. 1992). A plaintiff can establish an inference of discriminatory motive by "a variety of circumstances," *Plotke,* 405 F.3d at 1101, but Plaintiff did not allege any facts to establish such an inference nor raise genuine issue of material fact as to this element.

Viewing the record in the light most favorable to Plaintiff, the Court finds that, based on the undisputed facts, Plaintiff cannot show that he suffered an adverse employment action, *See Wheeler*, 418 F.App'x at 746, or that the circumstances give rise to an inference of discrimination. The Court accordingly grants summary judgment on the remaining, timely allegations in Plaintiff's Claims I and II.

## IV. CLAIM III—DISABILITY DISCRIMINATION

### A. LAW

The ADA prohibits discrimination "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). To establish a prima facie case of discrimination under the ADA, a plaintiff must show that (1) he is disabled as defined under the ADA; (2) he is qualified, with or without reasonable accommodation by the employer, to perform the essential functions of the job; and (3) he was discriminated against because of his disability. *Adair v. City of Muskogee*, 823 F.3d 1297, 1304 (10th Cir. 2016). The ADA defines a disability as "(a) a physical or mental impairment that substantially limits one or more major life activities for such individual; (b) record of such impairment; or (c) being regarded as having such an impairment." 42 U.S.C. § 12101(1). The definition of disability is to be construed in favor of broad coverage. *See* 42 U.S.C. § 12102(4)(a);

*see also* 29 C.F.R. § 1630.2(j)(1)(i) ("'substantially limits" is not meant to be a demanding standard").

In reliance on the Equal Employment Opportunity Commission's regulations interpreting the ADA, 29 C.F.R. § 1630(j)(1), the Tenth Circuit has held that, to demonstrate that an impairment is substantially limiting, a plaintiff must show that he is "unable to perform the activity or is significantly restricted in the ability to perform the major life activity compared to the general population." *Lusk v. Ryder Integrated Logistics*, 238 F.3d 1237, 1240 (10th Cir. 2001). Where an impairment is not so severe that it is "substantially limiting on its face," the plaintiff must present "evidence comparing [his] … restrictions to that of an average person." *Id.* "Limitations on the ability to engage in life activities, such as lifting heavy objects, is part of the human condition, and unless a plaintiff can show that his impairment reduces his capabilities significantly below those of the average person, he is not deemed 'disabled' under the Act." *Velarde v. Associated Regional and University Pathologist*, 61 F. App'x 627 at 629 (10th Cir. 2003).

**B.    ANALYSIS**

Plaintiff asserts that he is disabled in several ways: because of "Defendant['s] perception of Plaintiff being disabled"; because of his "mental health issues resulting from . . . the conduct of Defendant[]"; and "by virtue of his back and neck issues that originated with his [worker's compensation] injury."  (Doc. # 17 at ¶ 71.)  Plaintiff further contends that Defendant discriminated against him on the basis of his disability when it denied Plaintiff the accommodation to work on light duty and put Plaintiff on "forced unpaid FMLA until he was at 100% physical capacity." (*Id.* at ¶ 77.) Defendant moves

for summary judgment on Plaintiff's ADA discrimination claim, arguing that Plaintiff cannot establish that he is disabled as defined by the ADA. (Doc. # 80 at 22–24.) The Court agrees with Defendant.

To begin, Plaintiff's assertion that he is disabled because Defendant perceived him as such is unavailing and contradictory. Although he contends that he believed Defendant perceived him as disabled, he also states that Defendant did not believe he was truly injured. (Doc. # 17 ¶ 71; Doc. # 80-2 at 84) ("Q. Do you believe that Sam's management thought you were faking your injuries? A. Yes.") Moreover, Plaintiff's contentions with respect to his alleged back, neck, and mental health issues[3] are likewise without merit. Although Plaintiff asserts that he is disabled in these ways, he provides little information supporting that assertion. Plaintiff does not cite any evidence regarding the extent of his limitations or comparing his ability to that of the general population.

Moreover, Plaintiff does not—in the Complaint or in his response to the instant motion—allege that he is substantially limited in any major life activity, which is required for him to prevail on this claim. *See Doebele v. Sprint/United Mgt. Co.*, 342 F.3d 1117, 1129 (10th Cir. 2003) ("The plaintiff must articulate with precision the impairment alleged and the major life activity affected by that impairment.") (internal quotations omitted). Further, it is unclear from the record whether Plaintiff is still injured or how long the injury lasted, and a temporary condition does not qualify as a disability. *See Rhodes*

---

[3] The Court notes that Plaintiff also disclaimed his mental health disability allegation at his deposition. When asked "are you claiming that you have a mental health disability?" he responded, "I have never claimed that." (Doc. # 101-11 at 221.)

*v. Langston University*, 462 F.App'x 773, 779 (10th Cir. 2011) (citing *Borgialli v. Thunder Basin Coal Co.*, 235 F.3d 1284, 1290 (10th Cir. 2000)).

For all of these reasons, the Court finds Plaintiff failed to raise a genuine issue of fact regarding the first prong of a prima facie disability discrimination claim and therefore grants Defendant's request for summary judgment on Claim III. *See Rhodes*, 462 F.App'x at 779 (affirming summary judgment when plaintiff did not present evidence of the impact of his amputation and how his ability to walk compared to that of the general population).

## V.    CLAIM IV—RETALIATION

**A.    LAW**

In cases of retaliation, courts apply the same *McDonnell Douglas* burden-shifting framework that places the initial burden on the plaintiff to establish a prima facie case. To meet this burden for a retaliation claim, a plaintiff must demonstrate "(1) that [he] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1219 (10th Cir. 2013) (internal quotation marks omitted). "A causal connection is established where the plaintiff presents evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *MacKenzie v. City and County of* Denver, 414 F.3d 1266 at 1278–79 (10th Cir. 2005) (internal quotations removed). However, "unless an adverse action is *very closely* connected in time to the protected activity, a plaintiff must rely on additional evidence beyond mere temporal proximity to establish causation."

*Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004) (emphasis in original) (quotation omitted). Such evidence can include that the person who took adverse action against him knew of his protected activity, or that the person allegedly harboring the discriminatory animus knew and used the person who effected the adverse action as the "cat's paw" to affect his discriminatory designs. *Montes*, 497 F.3d at 1176.

## B.    ANALYSIS

Plaintiff contends Defendant retaliated against him for "pursing his Workers' Compensation case … filing EEOC Charge[s] … and whistleblowing to Open Door and Global Ethics." (Doc. # 17 ¶ 87.) Specifically, Plaintiff alleges in the April 2013 Charge that "his repeated requests for religious accommodation has become an issue with management and they are now retaliating against [him] by denying [his] worker's compensation claim." (Doc. # 23-1 at 2.) In the July 2015 Charge, Plaintiff contends that Defendant "retaliated against [him] for [his] prior Charge of Discrimination against Sam's Club…" (Doc. # 23-2. at 3.) In the Complaint, Plaintiff alleges the following retaliatory actions by Defendant:

1. increasing Plaintiff's quota;

2. defaming Plaintiff;

3. threatening Plaintiff with termination if he did not respond to letters when he was on FMLA leave;

4. denying Plaintiff recognition of his accomplishments;

5. denying Plaintiff appropriate due process to handle his concerns within the company;

6. failing "to assist and/or attempt to rectify the discrimination, differential treatment, and hostile employment environment to which the Plaintiff was subjected."

(*Id.* at ¶ ¶ 91, 94.)

Having thoroughly considered the parties' arguments and the applicable law, the Court finds that Plaintiff's claim of retaliation fails because he does not establish a genuine issue of material fact regarding the causation element of a prima facie retaliation claim. In the Complaint, Plaintiff alleges no facts as to when the acts occurred, who committed them, or whether the unidentified actor had knowledge of Plaintiff's protected opposition. (Doc. # 17); *See Zokari v. Gates*, 561 F.3d 1076, 1081 (10th Cir. 2009) (stating that the causation element of a retaliation claim requires a plaintiff to "show that the individuals who took adverse action against him knew of his protected opposition"). In his response to Defendant's motion for summary judgment, Plaintiff again fails to allege specific facts or cite to the record. In fact, Plaintiff does not mention the retaliation claim in his response beyond baldly stating, "[Plaintiff] alleged that Defendants … subjected him to retaliation for pursuing his Worker's Compensation claim." (*Id.* at 23.) Plaintiff points to no evidence in the record to support this bare contention. It is Plaintiff's burden to highlight specific facts to overcome summary judgment. *Adler*, 144 F.3d at 671. The Court will not "search for the proverbial needle in a haystack" in the absence of sufficient citation to record support for a party's allegations. *Gamble, Simmons & Co. v. Kerr–McGee Corp.,* 175 F.3d 762, 773 n.5 (10th Cir.1999).

Accordingly, the Court grants summary judgment on Plaintiff's retaliation claim. *See Celotex*, 477 U.S. at 324 ("Rule 56(e) ... requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' *designate* 'specific facts showing that there is a genuine issue for trial.' ")

## VI.        CLAIM VI—BAD FAITH

### A.    LAW

The tort of bad faith is governed by a two-year statute of limitations. *See* § 13–80–102(1)(a), C.R.S. (2007). Pursuant to Colorado's discovery rule, a cause of action for a bad faith tort claim accrues "on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence." § 13–80–108(1), C.R.S. (2007).

### B.    ANALYSIS

"Plaintiff alleges Defendant behaved in bad faith in its handling of Plaintiff's [worker's compensation] claim." Specifically, Plaintiff alleges (1) a bad faith denial of his worker's compensation claim; and (2) bad faith interference with and/or spoliation of evidence related to the claim. (Doc. # 17 ¶ 111.) Defendant moves for summary judgment on the bad faith claim arguing that it is barred by the statute of limitations. (Doc. # 80 at 28.)

In his response, Plaintiff does not address Defendant's argument regarding the timeliness of the bad faith claim. (Doc. # 101.) Instead, Plaintiff asserts that the Court, in its ruling on Defendant's 12(b)(6) motion, already held that the claim "remains viable to the extent that it alleges bad faith with regard to the handling of Plaintiff's WC Claim."

(*Id.* at 28.) Plaintiff, however, misconstrues the Court's ruling. Although the Court allowed portions of Plaintiff's bad faith claim to proceed, the Court did not rule on the claim's timeliness nor was such an issue raised by either party. Plaintiff's reliance on this Court's previous order to overcome Defendant's request for summary judgment is, therefore, misplaced. (Doc. # 58.)

The Court finds that summary judgment is, indeed, warranted based on the untimely nature of Plaintiff's claims. Plaintiff was informed of the denial of his worker's compensation claim by March 15, 2013. (Doc. # 101 at 6.)  A hearing regarding Plaintiff's disputed claim took place in front of an administrative law judge on October 21, 2013. (Doc. # 101 at 10.) On January 10, 2014, Plaintiff filed a post-hearing brief alleging that "[Defendant] acted in bad faith, that there were disclosure violations, that [Defendant] failed to provide materials … and there was spoliation of evidence." (Doc. # 83-2 at 17.) Plaintiff's post-hearing brief demonstrates that he knew both of the injury (the denial of his worker's compensation claim) and its causes (alleged bad faith by Defendant) by January 10, 2014 at the latest. The Court therefore finds the claim accrued by January 10, 2014 and the instant action, filed September 7, 2016, is outside of the two-year statute of limitations period. *See Brodeur v. American Home Assur. Co.*, 169 P.3d 139, 146 (Colo. 2007) (finding that plaintiff's bad faith tort claims accrued on the date his attorney stated that respondents were handling the claim in bad faith). The Court accordingly finds Defendant is entitled to summary judgment on Plaintiff's Claim VI—Bad Faith—because it is barred by the statute to limitation.

# VII.   CLAIM VII—DEFAMATION

## A.   LAW

"The elements of a cause of action for defamation (slander and libel) are: (1) defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by the publication." *Walters v. Linhof*, 559 F.Supp. 1231, 1234 (D.Colo. 1983). A defamatory communication is one which tends to hold the plaintiff up to hatred, contempt or ridicule, or to cause him to be shunned or avoided. *Id.* A "[c]ourt applies Colorado law to determine the applicable statute of limitations and whether a particular statute of limitations bars a claim." *Oaster v. Robertson*, 173 F.Supp.3d 1150 (D.Colo. 2016) (citing *Eerie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state…")). Actions for libel and slander must be brought within one year after the cause of action accrues. C.R.S. § 13–80–103(a).

## B.   ANALYSIS

In his Complaint, Plaintiff alleges Defendant defamed him "by using inappropriate language regarding [his] religious observation, national origin[,] and his Workmen's Compensation claims." (Doc. # 17 ¶ 122.) Plaintiff further asserts that Defendants "told management, associates, and customers that he was a fraud and a liar, litigious, and that he … faked his Workmen's Compensation injuries." (*Id*. at ¶ 123) (internal quotations removed). Defendant argues that it is entitled to summary judgment on Plaintiff's defamation claim because (1) the alleged statements are outside the one-year

limitations period and thus are time-barred; and (2) Defendant is not liable for unattributed statements. (Doc. # 80 at 30.)

In response to Defendant's motion for summary judgment, Plaintiff again fails to respond to Defendant's argument regarding the claim's timeliness. (Doc. # 101.) Indeed, Plaintiff never addresses the defamation claim in his response outside of the statement of facts. (*Id.* at 16–17.) The dates included in the facts suggest that the alleged defamatory statements all occurred sometime in 2013, making the instant claim filed in 2016 well beyond the one-year statute of limitations. *See, e.g.,* (Doc. # 101 at 17.) The Court therefore concludes that Defendant is entitled to judgment as a matter of law on Plaintiff's Claim VII.

## VIII.   CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment. (Doc. # 80.) With no remaining claims or counterclaims left in this case, the Court orders the case DISMISSED WITH PREJUDICE.

DATED: July 19, 2018                                    BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge